[Cite as *State v. Wiley*, 2014-Ohio-27.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99576**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# RICKY WILEY

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED IN PART; REVERSED IN PART;
REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-566101

**BEFORE:** Kilbane, J., Celebrezze, P.J., and Keough, J.

**RELEASED AND JOURNALIZED:** January 9, 2014

-i-

**ATTORNEY FOR APPELLANT**

Jonathan N. Garver
4403 St. Clair Ave.
Cleveland, Ohio 44103

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY: Justine Dionisopoulos
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

**{¶1}** Defendant-appellant Ricky Wiley appeals from his convictions for criminal nonsupport in violation of R.C. 2919.21(B) and an order of restitution imposed by the trial court. For the reasons set forth below, we affirm Wiley's convictions but find that the trial court erred in ordering the full amount of the child support arrearage as restitution. Accordingly, we reverse the trial court's judgment to the extent it orders restitution in the amount of $44,753 and remand the case to the trial court with instructions to limit the amount of restitution to the child support arrearage that accrued during the time frame of the criminal nonsupport charges of which Wiley was convicted.

**{¶2}** On August 23, 2012, Wiley was indicted on six counts of criminal nonsupport in violation of R.C. 2919.21(B). The charges arose out of Wiley's failure to pay child support for his two minor children from October 1, 2004 to September 30, 2006, from October 1, 2006 to September 30, 2008, and from October 1, 2008 to September 30, 2010, which Wiley had been ordered to pay as part of his divorce. Each count of the indictment included an allegation that Wiley had failed to provide support for a total accumulated period of 26 out of 104 consecutive weeks, making each of the offenses charged a fifth-degree felony. On January 7, 2013, the case proceeded to a jury trial, at which the following evidence was adduced.

{¶3} The state presented testimony from two witnesses, Lisa Wiley ("Lisa"), Wiley's ex-wife and the mother of his two minor children, and Paulina Raspovic, a support enforcement officer with the Cuyahoga County Child Support Enforcement Agency ("CSEA").

{¶4} Lisa testified that she and Wiley married in 1998 and had two sons together. When the couple divorced in August 2004, Lisa was awarded custody of the two boys, and Wiley was ordered to pay Lisa child support. As set forth in the August 4, 2004 judgment entry of divorce (the "divorce decree"), Wiley was obligated to pay $439.08 per month (including a two percent processing fee) in child support. Lisa testified that she never received any child support payments from Wiley.

{¶5} Lisa testified that during their marriage, Wiley was self-employed as a "general contractor," fixing homes, cutting down trees, and repairing roofs. She testified that this work was largely seasonal and that Wiley frequently went hunting, shooting, or fishing. She testified that in 1998, Wiley was shot by a cousin during a hunting accident. As a result of the accident, Wiley was hospitalized for two or three days. Lisa testified, however, that once he came home, Wiley "resumed his regular activities" and "continued to do the same work that he was doing."

{¶6} Lisa testified that Wiley was initially represented by counsel in their divorce case and that he attended several early meetings or hearings with his attorney in connection with their divorce. Lisa further testified that Wiley's attorney stopped representing him after he failed to pay her and that neither Wiley nor his attorney

appeared at the final hearing in their divorce action. Lisa testified that because Wiley did not appear at the final hearing, Wiley's child support obligation, as set forth in the divorce decree, was based on an estimate of $25,000 in annual income for Wiley, using W-2s Wiley had submitted in connection with the divorce proceedings.

{¶7} Although she never received any child support payments from Wiley through the child support agency, Lisa testified that, on three separate occasions in 2009, 2011, and 2012, Wiley gave her $300 or $400 to purchase school clothes for the children, that he once paid a $135 medical bill, and that he once paid expenses associated with one of their son's extracurricular activities. Lisa further testified that Wiley saw his sons regularly and that "[a] couple of times a month," he would give the boys $20 or $50 when he visited with them. Lisa testified that she never discussed the issue of child support payments with Wiley and that, to her knowledge, Wiley did not have a job and had never acknowledged his child support obligation either verbally or in writing.

{¶8} In 2009, CSEA filed a motion to show cause with the Domestic Relations Division of the Cuyahoga County Court of Common Pleas (the "domestic relations court") based on Wiley's nonpayment of child support. The court held a hearing on the motion in December 2009. Wiley did not appear at the hearing. On January 13, 2010, the court found Wiley to be in contempt of court for nonpayment of child support, determined that he owed $25,870.84 in arrears as of June 30, 2009, and sentenced him to 30 days in jail or 200 hours of community service in lieu of incarceration, which would be purged if he paid $2,500 within 30 days of the journalization of the order. The court also

increased Wiley's monthly support obligation to $527.08, consisting of his original child support obligation of $439.08 a month plus $88 towards arrears. Wiley did not purge the contempt.

{¶9} Raspovic testified that after Wiley failed to purge the contempt, an affidavit for capias was filed, requesting that a capias be issued to impose Wiley's jail sentence. On January 11, 2011, the court ordered that a capias be issued. Because Wiley was not brought in and did not turn himself in within a year of the issuance of the capias, the capias was dismissed in February 2012. {¶10} At trial, the state introduced certified copies of the August 4, 2004 divorce decree, the January 13, 2010 civil contempt order, and the affidavit and order for the issuance of a capias for noncompliance with the civil contempt order. The state also introduced CSEA payment history reports showing that Wiley had made no child support payments through CSEA from October 1, 2004 through September 30, 2010. Raspovic testified that these reports were obtained from the database CSEA uses to track child support payments. She further testified that based on these reports, the total amount in arrears from October 1, 2004 through September 30, 2010 was $31,613.76.

{¶11} Wiley testified in his defense. Wiley claimed that he never made any child support payments because he did not know he had been ordered to pay child support. Wiley testified that although he attended three or four hearings with counsel in connection with his divorce, his lawyer withdrew from the representation when he could no longer pay her. Wiley testified that he did not know he could appear in court without

counsel and that he stopped attending the divorce proceedings when he no longer had a lawyer. Wiley claimed that the issue of child support had never been raised in any of the divorce proceedings he had attended and that he had no idea a child support order might be entered in connection with the divorce. Although Wiley testified that he was familiar with the concept of child support, as to the existence of any court order requiring him to pay child support, Wiley testified: "Never heard of it. Never heard of it through [Lisa], through the court system, through nothing."

{¶12} Wiley testified that although his address had not changed, he had never received copies of the August 4, 2004 divorce decree, the January 13, 2010 civil contempt order, or any notices related to the 2009 contempt proceedings for his nonpayment of child support — all of which, according to court records, had been sent to him at his address. Wiley claimed that he first became aware that he owed child support a few months before trial when his cousin, a bail bondsman, called Wiley and told him that he was wanted for nonpayment of child support. Wiley testified that after talking with his cousin, he turned himself in.

{¶13} Although Wiley claimed to have never had any discussions with Lisa regarding any court-ordered child support, he testified that he did have a conversation with Lisa regarding the financial support he provided for their children three years before trial when, according to Wiley, Lisa placed a lien on his residence.

{¶14} In support of his claim that he had no notice of any court order obligating him to pay child support, Wiley introduced a printout of the online docket for his divorce

case and subsequent contempt proceedings along with certified copies of several documents relating to service on Wiley in the contempt proceedings. Wiley claimed that notations on the docket, indicating that documents with which the court had attempted to serve him in the contempt proceedings were "unclaimed," established that he had no notice of the contempt proceedings or any court order requiring him to pay child support.

{¶15} Wiley testified that although he did not make child support payments, he nevertheless provided financial support for his children to the extent he was able. Wiley testified that after his 1998 accident, he could no longer climb a ladder or perform tree or roofing work, significantly limiting what he could do to earn a living. Wiley claimed that he earned, at most, $10,000 or $12,000 a year after his divorce. He further testified that he had filed for disability benefits but because he could not afford to pay doctors to provide the medical records and reports necessary to support his disability claim, his request for disability benefits had been denied. Despite his limited income, however, Wiley claimed that if Lisa or his children told him that the children needed something, he provided it, including paying for their clothing, sports activities, and holiday gifts.

{¶16} At the conclusion of trial, the jury found Wiley guilty on all six counts of criminal nonsupport. The jury further found, as to each count, that Wiley had failed to provide support for a total accumulated period of 26 weeks out of 104 consecutive weeks. The trial court sentenced Wiley to five years of community control sanctions.

{¶17} Wiley appeals from his convictions, raising the following nine assignments of error:

Assignment of Error No.   I:
The trial court committed reversible error by admitting irrelevant and highly prejudicial evidence of the custodial parent's expenses, evidence that the custodial parent has bone marrow cancer, victim impact testimony, and other evidence elicited for no other purpose than to create sympathy for the custodial parent and her children and prejudice toward Appellant.

Assignment of Error No.   II:
The trial court committed prejudicial error by admitting evidence of a civil contempt finding for failing to provide child support where the evidence showed that Appellant had not attended the contempt hearing and there was no evidence that Appellant had been served with a copy of the contempt finding.

Assignment of Error No.   III:
The trial court's jury instruction, which stated, "if a properly addressed piece of mail is placed in the care of the postal service, it creates a rebuttable presumption of receipt," impermissibly relieved the prosecution of its burden to prove an essential element of the offenses charged in the indictment and improperly shifted the burden of proof to the defendant, thereby denying Appellant due process of law and violating the presumption of innocence protected by the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 16, of the Constitution of the State of Ohio.

Assignment of Error No.   IV:
The trial court committed plain error by failing to give an instruction on the affirmative defense of inability to pay under Ohio Rev. Code §2919.21(D).

Assignment of Error No.   V:
The trial court committed plain error, violated Crim.R. 30, and denied Appellant due process of law by submitting grossly incomplete written instructions to the jury.

Assignment of Error No.   VI:
Misconduct of the prosecuting attorney denied Appellant due process of the law and equal protection of the laws and constituted plain error.

Assignment of Error No.   VII:
Appellant was denied his constitutional right to the effective assistance of counsel where his court-appointed attorney (i) failed to object to irrelevant and highly prejudicial evidence; (ii) failed to request appropriate jury

instructions; (iii) failed to object to the trial court's failure to provide complete written instructions to the jury; and (iv) failed to object to improper comments made by the prosecuting attorney during closing arguments.

Assignment of Error No. VIII:
Appellant's conviction is against the manifest weight of the evidence.

Assignment of Error No. IX:
The trial court committed prejudicial error when it ordered restitution in the amount of $44,753, the alleged full amount of the child support arrearage, instead of the amount of non-support during the period of his conviction.

**Evidentiary Issues**

{¶18} In his first assignment of error, Wiley contends that the trial court erred in admitting testimony from Lisa regarding her expenses, the effect of Wiley's failure to make child support payments, and the fact that she had been recently diagnosed with bone marrow cancer. Wiley contends that this evidence was irrelevant, unnecessary, and prejudicial and served "no purpose other than to create sympathy for the custodial parent and her children." The state argues that the evidence was relevant to establish recklessness, i.e., that Wiley acted recklessly in failing to make child support payments and in relying on his sons' custodial parent to meet all of their financial needs.

{¶19} Of this evidence, Wiley objected only to Lisa's testimony regarding her expenses. Evidence that is admitted over a defendant's objection at trial is reviewed for abuse of discretion. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 103. A trial court has broad discretion in determining whether to admit or exclude evidence. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62.

Absent an abuse of that discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld. *Fackelman v. Micronix*, 8th Dist. Cuyahoga No. 98320, 2012-Ohio-513, ¶ 17, citing *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985). An abuse of discretion is more than a mere error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). It implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Id.*

{¶20} Wiley did not object to Lisa's testimony regarding the difficulties she faced in raising her sons without Wiley's financial support or her recent cancer diagnosis at trial. Accordingly, we review the trial court's admission of this evidence for plain error. Under Crim.R. 52(B), a plain error affecting a substantial right may be noticed by an appellate court even though it was not brought to the attention of the trial court. To constitute plain error, there must be an error that is plain or obvious that affected the outcome of the case. *In Re: J.G.*, 2013-Ohio-583, 986 N.E.2d 1122, ¶ 10 (8th Dist.), citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240; *State v. Harrison*, 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61 (an error rises to the level of plain error only if, "'but for the error, the outcome of the trial clearly would have been otherwise'"), quoting *State v. Long*, 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978). Notice of plain error "'is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice.'" *Barnes* at 27, quoting *Long, supra.*

**{¶21}** Wiley was charged with six counts of criminal nonsupport under R.C. 2919.21(B). R.C. 2919.21(B) provides:

> No person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support.

The indictment also charged Wiley, in each count, of failing to provide support for a total accumulated period of 26 weeks out of 104 consecutive weeks, making each of the counts a felony of the fifth degree under R.C. 2919.21(G)(1).

**{¶22}** R.C. 2919.21(B) does not specify a degree of intent; however, the Ohio Supreme Court has interpreted the statute to require proof of recklessness. *State v. Collins*, 89 Ohio St.3d 524, 529-530, 2000-Ohio-231, 733 N.E.2d 1118. A person acts "recklessly"

> when, with heedless indifference to the consequences of his actions, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist. R.C. 2901.22(C).

**{¶23}** Over Wiley's objection, the trial court permitted Lisa to testify generally regarding her personal and household expenses, i.e., her utilities, mortgage, medical bills, and a debt related to a previous job, and her expenses related to the children, i.e., lunch money, clothing, and costs of the children's school and extracurricular activities. Lisa then went on to testify regarding the financial difficulties she faced in raising two children on her own, without Wiley's child support payments:

Q. Okay. So what is it like raising two children on your own, and you've been on your own since 2003? What [has] it been like?

A. Lately, it's been very difficult since a decrease in the income. It's very difficult. It's a struggle. The children are always in need, and sometimes I was not able to give. This past Christmas, they really didn't get Christmas. That was basically given through his family because I was unable to do it. Thank God they were there for that, though. I was only able to just purchase the things that they needed. So it's been difficult. We've had times where the gas was off, the lights were off.

Q. Do you think that it would have made a difference had you received the monthly payment that [Wiley] was supposed to pay?

A. I would hope so. I would hope that it would.

**{¶24}** Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. The record reflects that although Wiley did not make any court-ordered child support payments, he visited regularly with his children and claimed to be aware of, and to provide for, their financial needs. What the children's needs were and whether Lisa was able to meet those needs in the absence of the child support she should have received from Wiley was probative of whether Wiley acted recklessly in failing to make the child support payments he had been ordered to pay. Wiley did not establish that the probative value of such testimony was "substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury" so as to warrant exclusion of the evidence under Evid.R. 403(A). The trial court did not abuse its discretion in admitting Lisa's testimony on these issues.

**{¶25}** Wiley also contends that the trial court erred in permitting Lisa to testify regarding her recent diagnosis for bone marrow cancer. Lisa's testimony regarding this issue was not specifically elicited by the state, but rather, was a brief, offhand remark Lisa made in explaining why her expenses had recently increased. There is nothing in the record that suggests this testimony was given any undue weight or that the outcome of the trial would have been different had this testimony been excluded. Accordingly, Wiley's first assignment of error is overruled.

**{¶26}** In his second assignment of error, Wiley contends that the trial court "committed prejudicial error" by admitting evidence of the January 13, 2010 civil contempt order for nonpayment of child support.

**{¶27}** The Fifth Appellate District addressed the admissibility of a similar order in *State v. Trickett*, 5th Dist. Stark No. 2002CA00289, 2003 Ohio App. LEXIS 305 (June 23, 2003). In *Trickett*, the Fifth District rejected the appellant's argument that the trial court had abused its discretion in admitting evidence of a prior family court order finding appellant in civil contempt for nonpayment of child support in appellant's trial for criminal nonsupport under R.C. 2919.21(B), reasoning as follows:

> In order to find appellant guilty of criminal non-support, the State was required to prove not only appellant's legal obligation to support the child, but also his breach of that obligation. * * * Through the introduction of the [finding of civil contempt] from family court, the State offered circumstantial evidence to establish appellant's legal obligation to pay support, his knowledge of such obligation, and his breach of this duty. Accordingly, we find the judgment entry was relevant and the trial court's admission of such was not an abuse of discretion. *Id.* at *6.

We agree with the reasoning of the court in *Trickett*. Evidence of the

January 13, 2010 civil contempt finding was relevant to establish Wiley's obligation to pay court-ordered child support, his breach of that obligation, and whether he acted recklessly in breaching that obligation.

{¶28} Wiley argues that regardless of the merits of the *Trickett* decision in general, we should decline to follow *Trickett* in this case because it was undisputed that he was not present at the civil contempt hearing and there was no evidence he was ever served with a copy of the contempt finding. We disagree.

{¶29} That Wiley did not appear at the civil contempt hearing does not, in and of itself, preclude admissibility of the January 13, 2010 civil contempt order. Nor is Wiley's claim that he never received a copy of the January 13, 2010 civil contempt order (or any other document from the domestic relations court relating to the civil contempt proceedings) determinative of whether Wiley had notice of the contempt proceedings. The record contains other evidence supporting a finding that Wiley was properly served in the civil contempt proceedings and that he, therefore, had notice of the proceedings.

{¶30} To bolster his testimony that he never received any documents from the domestic relations court related to the civil contempt proceedings, Wiley introduced a printout of the online docket for his divorce case (which included entries related to the civil contempt proceedings) along with certified copies of several documents relating to the service of documents on Wiley in the contempt proceedings, i.e., instructions for certified and regular mail service and an affidavit confirming ordinary mail service. Wiley argued that certain notations on the docket indicated that the notices with which the

court had attempted to serve him were returned to the court "unclaimed" and established that he had no notice of the contempt proceedings.[1]

**{¶31}** Where certified mail is "unclaimed," the civil rules provide that service may be made by ordinary mail. Civ.R. 4.6(D). The record reflects that when the certified mail sent to Wiley at his residence address was returned "unclaimed," ordinary mail service was requested and made.[2] Although ordinary mail service may fail if returned with an endorsement showing failure of delivery, it cannot be "unclaimed." There is nothing in the record that indicates that the ordinary mail service of Wiley in the contempt proceedings was returned undelivered.

---

[1]Wiley's "no notice" argument was based on the following docket entries:

10/26/2009 D1 SR CERTIFIED MAIL RECEIPT NO. 14474171 RETURNED 10/26/2009 FAILURE OF SERVICE ON DEFENDANT WILEY/RICKEY/LEE — UNCLAIMED NOTICE MAILED TO DEFENDANT(S) ATTORNEY

11/02/2009 D1 SR INSTRUCTION FOR SERVICE ON MOTION VIA ORDINARY MAIL TO RICKY WILEY FILED.

11/03/2009 D1 SR MOTION(14628691) SENT BY REGULAR MAIL SERVICE. TO: RICKEY LEE WILEY 4632 EAST 174TH EAST CLEVELAND, OH 44128 0000

11/19/2009 D1 AF AFFIDAVIT OF SERVICE ORDINARY MAIL SENT TO: RICKY LEE WILEY / RETURNED UNCLAIMED

[2]Wiley confirmed that the address listed for him on the docket and in the service instructions was his residence address and that his address had not changed during the relevant time period. The affidavit of service of ordinary mail that Wiley introduced into evidence states that, after certified mail was returned unclaimed, "a copy of the Order to Appear" was served on Wiley at his residence address on November 9, 2009.

**{¶32}** The record further reflects that when Wiley objected to the admission of the January 13, 2010 civil contempt order and an issue was raised as to whether Wiley had prior notice of the contempt proceedings, the trial court reviewed the relevant documents and carefully considered the parties' arguments relating to notice and service prior to concluding that there was sufficient evidence that Wiley had been properly served in, and had prior notice of, the contempt proceedings. There is nothing in the record that suggests that the trial court acted in an unreasonable, arbitrary, or unconscionable manner in deciding to admit this evidence. Accordingly, Wiley's second assignment of error is overruled.

### Jury Instructions

**{¶33}** Wiley's third, fourth, and fifth assignments of error relate to the jury instructions given by the trial court. In his third assignment of error, Wiley argues that the trial court denied Wiley due process of law by instructing the jury regarding the "mailbox rule." In his fourth assignment of error, Wiley claims that the trial court committed plain error by failing to instruct the jury on the affirmative defense of "inability to pay" under R.C. 2919.21(D). In his fifth assignment of error, Wiley maintains that the trial court committed plain error, violated Crim.R. 30, and denied Wiley due process by failing to include all of its jury instructions in the set of written instructions given to the jury for use during their deliberations. For the reasons that follow, we conclude that none of these arguments has any merit.

### Jury Instruction Regarding the Mailbox Rule

**{¶34}** In his third assignment of error, Wiley challenges the following jury instruction given by the trial court, which was based on the "mailbox rule," typically referenced in civil proceedings:

> Ladies and gentlemen, a rebuttable presumption of receipt of mail does arrive on evidence that a properly addressed piece of mail is placed in the care of the postal service. Because the presumption is rebuttable, however, evidence denying receipt creates a credibility issue that must be resolved by the trier of fact.

**{¶35}** When considering a claimed error in the trial court's jury instructions, the contested jury instruction "may not be judged in artificial isolation but must be viewed in the context of the overall charge." *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, 824 N.E.2d 504, ¶ 57, citing *State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 722 (1979), paragraph four of the syllabus. Thus, jury instructions are reviewed in their entirety to determine if they contain prejudicial error. *State v. Kimmie,* 8th Dist. Cuyahoga No. 99236, 2013-Ohio-4034, ¶ 69, citing *State v. Fields,* 13 Ohio App.3d 433, 436, 469 N.E.2d 939 (8th Dist.1984).

**{¶36}** Wiley argues that the trial court's mailbox rule instruction effectively "relieved the prosecution of its burden" to prove recklessness and "improperly shifted the burden of proof" on that element of the offense to Wiley, denying him due process of law and violating the presumption of innocence protected by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio

Constitution. As a result, Wiley contends that his convictions for criminal nonsupport should be reversed. **{¶37}** "Due process requires that the state establish beyond a reasonable doubt every fact necessary to constitute the crime charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). As such, the burden of proof on an essential element of a crime may not be shifted to the defendant by means of a conclusive or persuasion-shifting presumption. *See, e.g., Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Brecksville v. Crow*, 8th Dist. Cuyahoga No. 76909, 2000 Ohio App. LEXIS 5941, *7-9 (Dec. 18, 2000); *see also State v. Dailey*, 3d Dist. Hancock No. 5-99-56, 2000 Ohio App. LEXIS 1968, *10-11 (May 9, 2000) (defendant's due process rights violated when trial court's jury instructions included a mandatory jury directive on one of the essential elements of the crime charged). "Jury instructions that effectively relieve the state of its burden of persuasion violate a defendant's due process rights, and subvert the presumption of innocence and the right to have a jury determine the facts of a case." (Citations omitted.) *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 36.

**{¶38}** Wiley cites *Mullaney v. Wilbur*, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), *Morissette v. United States*, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), and *Sandstrom, supra*, for the proposition that even nonconclusive presumptions "implicate the due process clause" and where such a presumption has the effect of shifting the burden of persuasion to the defendant, it "cannot withstand constitutional muster." He argues that by creating a presumption of *receipt*, the trial court's jury

instructions improperly shifted the burden of persuasion to disprove *knowledge* and *recklessness* to Wiley, thereby denying him due process of law.

{¶39} In each of the cases Wiley relies upon, the challenged "presumption" effectively relieved the state of its burden of proving the defendant's criminal intent — an essential element of the crime at issue. *See State v. Price*, 60 Ohio St.2d 136, 142, 398 N.E.2d 772 (1979). The contested jury instruction in this case, by contrast, did not involve a presumption of recklessness (or any other element of criminal nonsupport) and did not relieve the state of its burden of proving any element of the offense. The contested jury instruction related to (1) Wiley's testimony that he had no notice of the civil contempt proceedings against him for nonpayment of child support because he never received any documents from the domestic relations court related to those proceedings and (2) the contrary evidence presented by the state that Wiley had, in fact, been properly served, via ordinary mail, in the contempt proceedings. The trial court instructed the jury that Wiley's "receipt" of mail could be presumed if the jury determined that such mail, properly addressed to Wiley, had been placed in the care of the postal service. The trial court further instructed the jury that this presumption was rebuttable and that once Wiley presented evidence denying receipt, whether or not he received it became "a credibility issue" for the jury to decide.

{¶40} "Receipt" of the notice mailed by the court in the civil contempt proceedings — the fact the jury could initially presume under the mailbox rule instruction — was neither an element of the offense of criminal nonsupport nor a fact "necessary to

constitute the crime."  *Winship*, 397 U.S. at 364, 90 S.Ct. 1068, 25 L.Ed.2d 368. Although whether Wiley received notice of the civil contempt proceedings was relevant to the jury's determination of recklessness, i.e., if Wiley received notice of the civil contempt proceedings, it arguably made it more likely that he acted recklessly in failing to pay his court-ordered child support, the trial court's instructions did not foreclose independent jury consideration of whether the facts proved established recklessness or any other element of the offense of criminal nonsupport.  Nor did it relieve the state of its burden of proving, by evidence, every essential element of the offense beyond a reasonable doubt.

{¶41} The contested mailbox rule instruction was included within the general instructions provided by the trial court.  After giving the general instructions, the trial court proceeded to instruct the jury on the "specific laws, terms and definitions applying to this case," including each of the elements the jury needed to prove beyond a reasonable doubt along with definitions of "recklessness" and "risk."  When viewed in their entirety, the trial court's instructions made it clear to the jury that, regardless of any "rebuttable presumption" of receipt that might apply under the mailbox rule instruction, the state still had the burden of proving recklessness (and each of the other elements of criminal nonsupport) beyond a reasonable doubt and that the jury needed to find that the state met its burden of proof on each of the elements of the offense to find Wiley guilty of the offenses charged.

**{¶42}** Upon a review of the record, we do not find that Wiley's due process rights were violated by the trial court's jury instructions. Further, even if the trial court erred in giving the contested jury instruction, we find that such error was harmless beyond a reasonable doubt. The record reflects that recklessness was not presumed but was, in fact, actually decided by the jury based on the evidence presented at trial. The state's evidence was sufficient to sustain Wiley's convictions in the absence of any presumption of receipt under the mailbox rule. *See Dailey*, 2000 Ohio App. LEXIS 1968 at *10-13 (despite improper jury charge effectively relieving the state of its burden of proving an element of aggravated burglary, error was harmless where the record demonstrated that the element was actually decided by the jury; "a mandatory jury directive resulting in constitutional error * * * [does] not necessarily require reversal of criminal convictions if the reviewing court can confidently determine from the entire record that the error was harmless beyond a reasonable doubt"), citing *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Accordingly, appellant's third assignment of error is without merit.

**Jury Instruction Regarding Affirmative Defense of Inability to Pay**

**{¶43}** Wiley also argues that the trial court committed plain error by failing to instruct the jury regarding the affirmative defense of "inability to pay" under R.C. 2919.21(D). He contends that because he presented evidence that showed that the child support order "was based upon an inflated statement of his income" and that

he was "unable to pay" the amount of child support ordered by the court, the trial court should have instructed the jury on this defense. R.C. 2919.21(D) provides, in relevant part:

> It is an affirmative defense to * * * a charge of failure to provide support established by a court order under division (B) of this section that the accused was unable to provide * * * the established support but did provide the support that was within the accused's ability and means.

**{¶44}** To prevail on this affirmative defense, a defendant must prove, by a preponderance of the evidence, that he: (1) is unable to provide the court-ordered support and (2) provided such support as was within his ability and means. *See, e.g., State v. Carter*, 10th Dist. Franklin No. 07AP-141, 2007-Ohio-6502, ¶ 14, citing *State v. Brown*, 5 Ohio App.3d 220, 222, 451 N.E.2d 1232 (5th Dist.1982). "Both elements must be met in order to successfully assert the affirmative defense of inability to pay." *Id.* "Lack of means alone cannot excuse lack of effort." *State v. Williams*, 5th Dist. Delaware No. 06 CAA 04 0026, 2007-Ohio-63, ¶ 40, citing *Brown* at 222; *see also State v. Balfour*, 8th Dist. Cuyahoga No. 97547, 2012-Ohio-3453, ¶ 16.

**{¶45}** Jury instructions are a statement of the law applicable to the particular facts of the case, based on the evidence presented at trial. It is within the discretion of the trial court to determine whether the evidence presented at trial is sufficient to warrant a particular jury instruction. *State v. Singleton*, 8th Dist. No. 98301, 2013-Ohio-1440, ¶ 35, citing *State v. Fulmer*, 117 Ohio St.3d 319, 2008-Ohio-936, 883 N.E.2d 1052, ¶ 72.

**{¶46}** Wiley did not request an instruction under R.C. 2919.21(D) below. He has, therefore, waived all but plain error. *State v. Hall*, 8th Dist. Cuyahoga No. 98615,

2013-Ohio-2900, ¶ 20; *State v. Price,* 8th Dist. Cuyahoga No. 99058, 2013-Ohio-3912, ¶ 30; Crim.R. 30(A), 52(B).

**{¶47}** In this case, we find that there was insufficient evidence to warrant an instruction based on R.C. 2919.21(D). R.C. 2919.21(D), by its terms, applies only where the defendant, although "unable to provide * * * the established support," "did provide the support that was within the [defendant's] ability and means." Where, as here, it is undisputed that no child support payments were made, R.C. 2919.21(D) is inapplicable. *See, e.g., State v. Jones*, 2d Dist. Montgomery No. 20162, 2004-Ohio-4519, ¶ 28 (defendant was not entitled to jury instruction under R.C. 2919.21(D) where defendant provided no support within the relevant time period; requirement that defendant "did provide the support that was within the accused's ability and means" requires "some evidence that a modicum of support was provided"); *State v. Tackett*, 10th Dist. Franklin No. 99AP-1489, 2000 Ohio App. LEXIS 2497, *6-7 (June 13, 2000) ("In order to establish a defense under R.C. 2919.21(D), a defendant must be able to show that he 'did provide the support that was within the accused's ability and means.'"); *see also State v. Wolf*, 11th Dist. Geauga No. 2011-G-3034, 2012-Ohio-3016, ¶ 19-20 (jury did not err in rejecting affirmative defense under R.C. 2919.21(D) where defendant did not pay any support for period of 81 weeks).

**{¶48}** Wiley argued that although he did not make any child support payments through CSEA, he nevertheless supported his children, to the extent he was able, by giving money directly to Lisa and the children for the children's clothing, extracurricular

activities, and holiday gifts. Under R.C. 3121.45, however, the payment of money directly to a child or to the person entitled to support payments under a support order is deemed a gift, not a support payment.[3] *State v. Ferguson*, 10th Dist. Franklin No. 12AP-282, 2012-Ohio-6231, ¶ 14.

**{¶49}** Moreover, Wiley presented no evidence that the minimal support he did provide was all that he could provide within his "ability and means." He provided no documentation of his claimed earnings or his expenses, no evidence of his efforts to locate employment, and no medical evidence supporting his claim that he was disabled or was otherwise limited in what he could do to earn a living following his 1998 accident. *See, e.g., Williams*, 2007-Ohio-63 at ¶ 41 (appellant failed to establish by a preponderance of the evidence that he was unable to provide court-ordered support and had provided such support as was within his ability and means where although he was in jail during part of the time covered by the indictment, he did not pay child support for much of the

---

[3] R.C. 3121.45 provides, in relevant part:

> Any payment of money by the person responsible for the support payments under a support order to the person entitled to receive the support payments that is not made to the office of child support, or to the child support enforcement agency administering the support order * * * shall not be considered a payment of support under the support order and, unless the payment is made to discharge an obligation other than support, shall be deemed to be a gift.

The August 4, 2004 divorce decree establishing Wiley's child support obligation likewise explicitly states that monthly child support payments "shall be paid through" the child support agency and that any payments not made through the child support agency "shall not be considered as payment of support."

remaining period of time and "there was a dearth of evidence" regarding efforts appellant made to find employment); *State v. King*, 12th Dist. Clermont No. CA2003-06-053, 2004-Ohio-3011, ¶ 21 (where defendant "offered no specifics on the issue of what support he was capable, or incapable, of providing, given his 'ability and means' in light of his disability," the trial court did not err in finding defendant failed to prove affirmative defense under R.C. 2919.21(D)).

{¶50} Accordingly, the trial court committed no error — much less plain error — in failing to instruct the jury regarding the affirmative defense under R.C. 2919.21(D). Wiley's fourth assignment of error is overruled.

### Failure to Provide a Complete Set of Written Instructions to the Jury

{¶51} Wiley also claims that the trial court committed plain error, violated Crim.R. 30, and denied him due process of law by failing to give the jury a complete written copy of all of its instructions for use during its deliberations. {¶52} Crim.R. 30(A) provides, in relevant part:

> The court shall reduce its final instructions to writing or make an audio, electronic, or other recording of those instructions, provide at least one written copy or recording of those instructions to the jury for use during deliberations, and preserve those instructions for the record.

Wiley did not object to the trial court's jury instructions on this basis below. Accordingly, once again, we review this claim for plain error. Crim.R. 30(A), 52(B).

{¶53} Wiley argues that by providing only certain of its instructions to the jury in writing, the trial court placed "undue emphasis" on the instructions the jury needed to

convict Wiley and "diminished the importance" of other instructions "needed to protect [Wiley's] constitutional rights," such as its instructions on the presumption of innocence, burden of proof, definition of proof, and an instruction on the affirmative defense under R.C. 2919.21(D), thereby prejudicing his defense.

**{¶54}** This court has previously held such a statement "does not withstand [a defendant's] burden of proving prejudice." *State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440, ¶ 23 (where trial court gave both preliminary and cautionary instructions after jury was empaneled and sworn in, prior to opening statements, but did not repeat these instructions, only reading and submitting written instructions to the jury on the elements, definitions of each offense, and complicity at the close of trial, trial court did not commit plain error in failing to comply with Crim.R. 30(A)), citing *State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983); *see also State v. Demecs,* 6th Dist. Fulton No. F-05-021, 2006-Ohio-3802, ¶ 22.

**{¶55}** We have already rejected Wiley's argument that the trial court should have instructed the jury regarding the affirmative defense under R.C. 2919.21(D). As to the remainder of his argument, the record reflects that the trial court provided written instructions to the jury detailing the counts at issue in the indictment, the elements required to prove the offense with which Wiley was charged, an explanation of the burden of proof, definitions of the terms "reasonable doubt," "recklessly," and "risk," and instructions addressing multiple counts and the "mailbox rule." The record further reflects that the trial court orally gave the jury each of these instructions along with

additional instructions addressing the presumption of innocence, the credibility of witnesses, the types and quality of evidence, and other issues.

{¶56} Although the trial court did not comply with Crim.R. 30(A), Wiley has not demonstrated that the trial court's failure rises to the level of plain error, i.e., that if the court had provided all of its instructions in writing to the jury, the outcome of the trial would have been different. Accordingly, Wiley's fifth assignment of error is overruled.

**Prosecutorial Misconduct**

{¶57} In his sixth assignment of error, Wiley contends that the prosecutor improperly expressed "her personal opinion on the ultimate issue" in the case and sought to "enhance her standing before the jury by emphasizing her extensive experience" by making the following statement at the beginning of her closing argument:

> Good morning. In thinking about what to say in closing. I'm -- *to me, because I do this day in and day out, the case is clear cut and dry.* (Emphasis added.)

The prosecutor continued:

> I realize that to you guys it may not be. There have been a lot of issues that have been brought up that really do not and should not matter. The vital part of this case is the crime itself. That's the statute that you really need to pay attention to. I proved beyond a reasonable doubt that the three elements of the statute were met. And those elements are recklessness, which is the culpable mental state, the court order and the 26 out of 104 consecutive weeks that he failed to pay. I'm going to talk about each one. * * *

{¶58} A prosecutor's remarks constitute prosecutorial misconduct if the remarks were improper and prejudicially affected substantial rights of the defendant. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149, citing *State v.*

*Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). The "touchstone" of this analysis "'is the fairness of the trial, not the culpability of the prosecutor.'" *Id.*, quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).

{¶59} Wiley failed to object to the complained of portion of the prosecutor's closing arguments at trial and has, therefore, waived all but plain error. *State v. Williams*, 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). Reversal for prosecutorial misconduct is warranted under the plain error standard only if it is clear that defendant would not have been convicted in the absence of the improper conduct. *State v. McGlothan*, 8th Dist. Cuyahoga No. 97212, 2012-Ohio-4049, ¶ 32; *Cleveland v. Coleman*, 8th Dist. Cuyahoga No. 97128, 2012-Ohio-3942, ¶ 41, citing *State v. Saleh*, 10th Dist. Franklin No. 07AP-431, 2009-Ohio-1542, ¶ 68.

{¶60} In general, prosecutors are given "wide latitude" in their closing arguments. *Id.* In closing argument, a prosecutor may comment on "'what the evidence has shown and what reasonable inferences may be drawn therefrom.'" *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990), quoting *State v. Stephens*, 24 Ohio St.2d 76, 82, 263 N.E.2d 773 (1970). However, a prosecutor may not express his or her personal belief or opinion as to the credibility of a witness, the guilt of an accused, or allude to matters that are not supported by admissible evidence. *Smith*, 14 Ohio St.3d at 14, 470 N.E.2d 883.

{¶61} Considering the latitude granted to prosecutors and our review of the entire record, we find that Wiley's challenge to the prosecutor's closing argument fails to satisfy the prosecutorial misconduct standard. A prosecutor's comments are not to be taken out

of context and "given their most damaging meaning." *State v. Williams*, 8th Dist. Cuyahoga No. 2012-Ohio-1741, ¶ 12, citing *State v. Hill*, 75 Ohio St.3d 195, 204, 661 N.E.2d 1068 (1996). The prosecutor did reference her own personal opinion in stating that "*to me*, * * * the case is clear cut and dry." (Emphasis added.) When considered in context, however, we find that the prosecutor was not attempting, by means of her remarks, to express her personal opinion regarding the ultimate issue in the case or to enhance her standing before the jury by emphasizing her experience, but rather, was merely attempting to focus the jury's attention on what the state contended were the relevant evidence and issues in the case, as opposed to those issues and evidence "that have been brought up that really do not and should not matter." As such, the prosecutor's comments did not constitute prosecutorial misconduct. *See State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, 793 N.E.2d 446, ¶ 45-46 (no prejudicial error where prosecutor "failed to appreciate that he should not say, 'I think' or 'I believe' before asserting what the evidence proved"). Further, even if it were otherwise, Wiley has made no showing that the prosecutor's remarks affected the outcome of his trial. Accordingly, Wiley's sixth assignment of error is overruled.

**Ineffective Assistance of Counsel**

{¶62} In his seventh assignment of error, Wiley argues that his convictions should be overturned because he was denied the effective assistance of counsel. Wiley contends that he was denied effective assistance of counsel due to his trial counsel's failure to object to Lisa's testimony regarding her expenses, cancer diagnosis, and the impact of

Wiley's nonpayment of child support. He also contends that he was denied effective assistance of counsel based on his counsel's failure to request a jury instruction on the affirmative defense of inability to pay under R.C. 2919.21(D), failure to object to the trial court's submission of only partial written instructions to the jury, and failure to object to the prosecutor's remark that "to me * * * the case is clear cut and dry" at the outset of her closing argument.

{¶63} To demonstrate ineffective assistance of counsel, a defendant must satisfy a two- prong test. *Strickland v. Washington*, 466 U.S. 668, 669, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He must establish: (1) that his counsel's representation fell below an objective standard of reasonableness, and (2) that he was prejudiced as a result of counsel's deficient performance. *Id.* at 687; *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Under the first prong, reversal requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687. Under the second prong, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.*

{¶64} Because there are "countless ways to provide effective assistance in any given case," judicial scrutiny of a lawyer's performance must be "highly deferential." *Id.* at 689. Decisions regarding strategy and trial tactics "are generally granted a wide

latitude of professional judgment"; it is "not the duty of a reviewing court to analyze the trial counsel's legal tactics and maneuvers." *State v. Gau*, 11th Dist. Ashtabula No. 2005-A-0082, 2006-Ohio-6531, ¶ 35, citing *Strickland* at 689. There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Strickland* at 689; *see also State v. Phillips*, 74 Ohio St.3d 72, 85, 656 N.E.2d 643 (1995) ("Debatable trial tactics generally do not constitute a deprivation of effective counsel"), citing *State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980).

**{¶65}** The record does not support Wiley's claims that the performance of his trial counsel was deficient or that he was in any way prejudiced by his counsel's performance. Wiley's counsel did object when the state initially questioned Lisa regarding her expenses. That objection was overruled. Although Wiley's counsel did not specifically object to Lisa's testimony regarding her bone marrow cancer, her testimony regarding the issue consisted of a single offhand remark, made in the context of explaining why her expenses and, in particular, her medical bills had recently increased. With respect to Lisa's testimony regarding the challenges she faced in raising the boys without Wiley's child support, Wiley's counsel may have chosen not to object to this testimony because he believed certain aspects of the testimony were actually favorable to Wiley — for example, Lisa's testimony that although Wiley did not make child support payments he, at times, paid for items the children needed. We will not second-guess counsel's trial strategy decisions. *State v. Tibbetts*, 92 Ohio St.3d 146, 167, 749 N.E.2d

226, citing *Bradley*, 42 Ohio St.3d at 142-144, 538 N.E.2d 373, and *State v. Mason*, 82 Ohio St.3d 144, 157, 694 N.E.2d 932 (1998).

{¶66} With respect to counsel's failure to request a jury instruction based on R.C. 2919.21(D), as discussed above, the evidence was insufficient to warrant such an instruction. Counsel is not required to make requests that would be futile. *State v. Knox*, 8th Dist. Cuyahoga Nos. 98713 and 98805, 2013-Ohio-1662, ¶ 20, citing *State v. Ford*, 8th Dist. Cuyahoga Nos. 88946 and 88947, 2007-Ohio-5722, ¶ 9 ("The failure to do a futile act cannot be the basis for a claim of ineffective assistance of counsel, nor could such a failure be prejudicial"). As to counsel's failure to object to the trial court's submission of partial written instructions to the jury, perhaps he thought the submission of only certain instructions to the jury in writing would be advantageous to Wiley by focusing the jury's attention on those instructions that arguably had the greatest relevance to the case, i.e., the elements of the crime charged, the burden of proof, and definitions such as recklessly, risk, and beyond a reasonable doubt. Finally, although Wiley's counsel did not object to the prosecutor's remark, during the opening lines of her closing argument, that, to her, the case was "clear cut and dry," he objected several other times during the prosecutor's closing and rebuttal, many of which objections were sustained. "The fact that different counsel may have made additional objections does not, alone, rise to the level of ineffective assistance." *State v. Ortiz*, 6th Dist. Wood No. WD-10-64, 2011-Ohio-4860, ¶ 31.

**{¶67}** Because Wiley can satisfy neither prong of the *Strickland* test, he has not shown he was denied effective assistance of counsel. Accordingly, Wiley's seventh assignment of error is overruled.

**Manifest Weight of the Evidence**

**{¶68}** In his eighth assignment of error, Wiley contends that his convictions for criminal nonsupport are against the manifest weight of the evidence.

**{¶69}** A manifest weight challenge questions whether the state met its burden of persuasion at trial. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror," and, after

> reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶70}** In considering a manifest weight challenge, this court must remain mindful that the credibility of the witnesses and the weight to be given the evidence are primarily for the trier of fact to assess. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to take into account

inconsistencies, along with the witnesses' manner, demeanor, gestures, and voice inflections, in determining whether the proffered testimony is credible. *Id.*, citing *State v. Williams*, 10th Dist. Franklin No. 02AP-35, 2002-Ohio-4503; *State v. Kurtz*, 8th Dist. Cuyahoga No. 99103, 2013-Ohio-2999, ¶ 26. Reversal on manifest weight grounds is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *Martin, supra*.

{¶71} Wiley argues that his testimony that he did not attend the final hearing in his divorce case and was unaware of the existence of a court order requiring him to pay child support, combined with Lisa's testimony that she never discussed the subject of child support payments with him, precluded the state from proving that he "recklessly" failed to pay court-ordered child support beyond a reasonable doubt. As such, Wiley contends, his convictions were against the manifest weight of the evidence. We disagree.

{¶72} In *State v. Collins*, 89 Ohio St.3d 524, 733 N.E.2d 1118 (2000), the Ohio Supreme Court considered what evidence is required to establish that an obligor acted recklessly in failing to pay court-ordered child support under R.C. 2919.21(D). The court held that where a court order exists, mandating that an obligor make child support payments to a child support agency and that agency shows no record of any payments having been received from that person for many years, a circumstantial inference arises that the person was aware of the obligation to pay and "recklessly" failed to do so:

> The state most commonly proves criminal intent through circumstantial evidence. Where, after notice and opportunity to be heard, a court order is issued mandating a person to submit child support payments to a specific agency of government, and that agency shows no record of any payments

having been received from that person over a period of many years, a circumstantial inference arises that the person was aware of the obligation to pay and yet did not do so. * * * Where no payments reach the agency over a period of many years, it may be inferred that the obligor took no action to ensure payment, and, in fact, intended not to pay. Accordingly, where no evidence is presented to counter that inference, such as evidence of mistake or misdirected payments, a jury has evidence before it sufficient to establish a culpable mental state of at least recklessness, beyond a reasonable doubt. * * * *Id.* at 530.

{¶73} After reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice in convicting Wiley. The record clearly establishes that a court order to pay child support was entered as part of the divorce decree and that Wiley failed to make a single child support payment through the child support agency for the six-year period covered by the indictment. The state introduced certified copies of both the August 4, 2004 divorce decree initially establishing Wiley's child support obligation and the January 13, 2010 judgment entry increasing his monthly child support obligation, as well as CSEA's records indicating that no child support payments had ever been made. Further, Wiley admitted that he never made a single child support payment through CSEA, claiming that he did not know he had been ordered to do so.

{¶74} Although Wiley testified that he never received a copy of the divorce decree, contempt finding, or any other document from the domestic relations court advising him of his court-ordered child support obligation and further claimed that he "[n]ever heard of [any court order to pay child support] through [Lisa], through the court

system, through nothing" and never thought to inquire about it, it was for the trier-of-fact to judge, in the first instance, the credibility of that testimony.

{¶75} Wiley also testified that he knew he was getting divorced; that he had been initially represented by counsel in the divorce; that he had attended several hearings or meetings in connection with the divorce, including meetings addressing issues relating to their children; that he had notice of, but chose not to attend, the final divorce hearing because he was no longer represented by counsel; that he was aware of the concept of child support; that he knew Lisa had sole custody of their two children following their divorce; and that he had continuously resided at the same address (which he confirmed was the address listed for him in the domestic relations court's records to which court notices were sent) during the time period at issue. Wiley also testified that he initiated a conversation with Lisa regarding the financial support he provided for their children three years before trial when, according to Wiley, Lisa placed a lien on his residence. In addition, the state presented evidence from which the jury could have reasonably concluded that Wiley had been properly served with, and therefore had notice of, the civil contempt proceedings to enforce Wiley's child support obligation. There was no evidence that Wiley ever attempted to vacate or modify the civil contempt order or his child support obligation in the divorce decree due to lack of proper service or notice or on any other ground.

{¶76} The state presented sufficient evidence from which the jury could have reasonably concluded that, despite Wiley's claims to the contrary, Wiley, in fact, had

knowledge of his court-ordered child support obligation or, at the very least, should have known of his child support obligation and was wilfully blind as to whether or not such an obligation existed.

**{¶77}** This case came down to the credibility of Wiley's testimony, which was properly resolved by the jury. There were a number of inconsistencies in Wiley's testimony. The jury simply did not believe Wiley's testimony that he never paid child support because he never knew he had been ordered by the domestic relations court to do so. The jury was entitled to reject Wiley's testimony as incredible and to conclude, based on the state's evidence, that by (1) failing to make a single court-ordered child support payment for more than six years while Lisa struggled to support the children and/or (2) ignoring civil contempt proceedings and a civil contempt order to enforce that obligation, Wiley acted recklessly in failing to pay the court-ordered child support for the time period specified in the indictment.

**{¶78}** This is not the "exceptional case in which the evidence weighs heavily against the conviction." We find that the jury could reasonably conclude from the substantial circumstantial evidence presented by the state that the state had proven each element of the offense of criminal nonsupport beyond a reasonable doubt. *State v. Pruitt*, 8th Dist. Cuyahoga No. 98080, 2012-Ohio-5418, ¶ 18 ("[W]eight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt"), citing *State*

*v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraphs one and two of the syllabus.    Accordingly, Wiley's eighth assignment of error is overruled.

**Restitution**

**{¶79}** In his final assignment of error, Wiley contends that the trial court erred in ordering the full amount of the child support arrearage — $44,753 — as restitution rather than the amount of the child support arrearage for the time period covered by the counts in the indictment, i.e., $31,613.76 from October 1, 2004 to September 30, 2010.   Wiley argues that R.C. 2929.18(A)(1) limits the amount of restitution in criminal nonsupport cases to the amount of support owed for the time period in the indictment and, therefore, requests that the restitution order be vacated.   The state concedes that the trial court erred in ordering the full arrearage amount, $44,753, as restitution.

**{¶80}** We agree that under R.C. 2929.18(A)(1), any restitution award entered as part of Wiley's sentence could not have exceeded $31,613.76, i.e., the child support arrearage that accrued during the time frame of the criminal nonsupport charges of which Wiley was convicted.   *See, e.g., State v. Truitt*, 10th Dist. Franklin No. 10AP-795, 2011-Ohio-2271, ¶ 23-25; *State v. Turns*, 10th Dist. Franklin No. 10AP-740, 2011-Ohio-1497, ¶ 33-37; *State v. Schul*, 12th Dist. Butler No. CA2009-08-215, 2010-Ohio-1285, ¶ 7-13.   Accordingly, Wiley's ninth assignment of error is sustained. We reverse the trial court's judgment to the extent it orders restitution in the amount of $44,753 and remand the case to the trial court with instructions to limit the amount of restitution to $31,613.76.

**{¶81}** Judgment affirmed in part, reversed in part, and remanded.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MARY EILEEN KILBANE, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR