OPINION
{¶ 1} Defendant-appellant, Derek Carter, was indicted by the Franklin County Grand Jury in April 2005 on one count of non-support of dependants, in violation of R.C. 2919.21, a felony of the fifth degree. Appellant waived his right to a jury trial and was found guilty on January 22, 2007. The trial court ordered appellant to pay restitution to Franklin County Child Support Enforcement Agency ("CSEA") in the amount of $14,193.36 and imposed three years of community control with conditions.
 {¶ 2} Appellant filed a timely notice of appeal and assigned the following assignments of error: *Page 2 
 I. THE TRIAL COURT ERRED AND DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE SECTION TEN OF THE OHIO CONSTITUTION BY FINDING HIM GUILTY OF NON SUPPORT OF DEPENDENTS AS THAT VERDICT WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS ALSO AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE. * * *
 II. APPELLANT INTRODUCED SUFFICIENT CREDIBLE EVIDENCE AT TRIAL TO ESTABLISH THE AFFIRMATIVE DEFENSE SET FORTH IN REVISED CODE SECTION 2919.21(D) BY A PREPONDERANCE OF THE EVIDENCE. * * *
 {¶ 3} In lieu of trial testimony, the state and appellant stipulated to the following facts: appellant was the father of the minor child, Marquan Carter; appellant had been ordered to pay child support for his minor child by the Domestic Relations Division of the Franklin County Court of Common Pleas; between March 10, 2003 and March 10, 2005, appellant had failed to pay 26 weeks of support during the period of 104 consecutive weeks; and appellant recklessly failed to provide support as established by the court order in violation of R.C. 2919.21.
 {¶ 4} Appellant asserted that he had been unable to provide the established support, but that he did provide the support which was within his ability and means. Appellant testified that he had started his own flooring business. At first, business was good; however, the work "bottomed out there at the end." (Tr. 10.) Appellant had been in the flooring business for approximately 14 years as a subcontractor. Appellant testified that there simply was less work to do and the jobs which he got were smaller. Specifically, appellant testified that he had been providing flooring for Red Lobster and Olive Garden restaurants. Those restaurants opened up fewer stores and, as such, *Page 3 
appellant had less work. (Tr. 10-11.) Appellant testified further that he had other financial problems during this same time period. First, appellant was providing support for two other children, Denay and Dani. That support amount was approximately $65 per week, per child. (Tr. 12-13.) Second, appellant was behind in his student loans and had recently made arrangements to pay $75 a month on those loans. (Tr. 13.) Third, appellant testified that he was having some problems with the Internal Revenue Service ("IRS") with regards to back income taxes. (Tr. 14.) Appellant did not indicate the depth of these problems or whether he had made any arrangements.
 {¶ 5} Appellant also testified that he had a good relationship with Marquan, that he talked to him two or three times a week, and saw him approximately once a week when he was in town. Appellant also testified that, while Marquan's mother, Ebony, was in school, Marquan would stay with him "two or three times a week, maybe spend the night, you know, twice in a three-month period." (Tr. 15.) Appellant testified further that he did give Ebony money for Marquan when she asked for it. Specifically, appellant recalled giving Ebony money to pay her electric bill and to buy some food. (Tr. 16.) Appellant testified that the largest amount of money he gave Ebony at one time was "[p]robably, eight, nine hundred dollars," and that he gave her smaller amounts up to three hundred dollars at times. (Tr. 17.) Appellant testified that he gave this money directly to Ebony instead of paying it through CSEA. Lastly, appellant testified that, near the end of the time period at issue he did take a job working at a movie theater to make ends meet and he earned approximately $100 every two weeks. (Tr. 19-20.)
 {¶ 6} Ebony Robinson, Marquan's mother, also testified. Ebony testified that during the time frame at issue, appellant "did give me money here and there. He paid a *Page 4 
gas bill. He did buy groceries." (Tr. 21.) Ebony estimated that appellant had given her a total of between $2,000 and $2,500 during this time period. Ebony testified that appellant would keep Marquan "maybe a day or two and then bring him back home," and that this happened "maybe two times a week or every other weekend." (Tr. 22.) On cross-examination, Ebony testified that appellant never gave her any large sums of money as he had testified.
 {¶ 7} The trial court addressed appellant concerning his evidence and stated, in pertinent part, as follows:
 * * * [W]hile I would agree that there is evidence to support that he did provide payments and gave money to support to a certain degree his child, * * * that level of support in and of itself does not necessarily meet the standard with respect to the affirmative defense.
 * * * [T]he idea that he was working and out of town and attempting to get his business going, * * * the Court can appreciate that, * * * but with respect to the affirmative defense requirements of the code and the affirmative defense requirements with respect to this offense in and of itself, I don't think we've met the standard there.
 The Court would be probably more inclined to say he had attempted and did what he could have done had the payments gone through child support as opposed to being made direct. * * * I do not believe that the affirmative defense has been established in this case.
 Therefore, the Court will enter a finding of guilty.
 In doing that, I still am of the opinion that something other than this could have been done in this case or should have been done in this case.
(Tr. 31-32.) *Page 5 
 {¶ 8} In his first assignment of error, appellant contends that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.
 {¶ 9} When presented with a sufficiency of the evidence argument, this court construes the evidence in favor of the prosecution and determines whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259.
 {¶ 10} When reviewing appellant's manifest weight argument, this court sits as a "`thirteenth juror'" to determine whether the greater amount of credible evidence supports the outcome in the trial court below.State v. Thompkins (1997), 78 Ohio St.3d 380, 387. We must review the testimony presented in the trial court, evaluate and weigh the evidence, consider the credibility of the witnesses, and resolve any evidentiary conflict. Id. Ultimately, we must determine whether the fact-finder "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." Id.
 {¶ 11} Appellant was found guilty of non-support, in violation of R.C.2919.21(B) which provides: "No person shall abandon, or fail to provide support as established by a court order to another person whom, by court order or decree, the person is legally obligated to support."
 {¶ 12} As mentioned above, appellant was charged with a fifth degree felony for failure to provide support for an accumulated period of 26 weeks out of a consecutive 104 weeks, or two years. R.C. 2919.21(G)(1).
 {¶ 13} Appellant does not dispute that he made no more than $2,500 in payments to Ebony during the period at issue. Further, appellant does not dispute that he failed to make these payments through CSEA, that these payments were not regular, and that he *Page 6 
only gave Ebony money when she asked for it. Instead, he submits that the state failed to present sufficient evidence to convict him and that the manifest weight of the evidence demonstrates that he established an affirmative defense to the offense. Pursuant to R.C. 2919.21(D):
 It is an affirmative defense to a charge * * * of failure to provide support established by a court order under division (B) of this section that the accused was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means.
 {¶ 14} In asserting this defense, appellant bears the burden of proving by a preponderance of the evidence that: (1) he was unable to provide the court ordered support; and (2) he did provide such support as was within his ability and means. State v. Brown (1982),5 Ohio App.3d 220. Both elements must be met in order to successfully assert the affirmative defense of inability to pay.
 {¶ 15} Addressing first appellant's contention that the evidence was not sufficient to sustain a conviction, this court disagrees. The following was stipulated to at the trial: appellant was Marquan's father; there was a court order requiring that appellant pay child support; and appellant failed to provide such support for a period of 26 weeks out of 104 consecutive weeks. Further, appellant's recklessness can be inferred from the fact that he knew he was obligated to support his son, but knowingly failed to do so. State v. Collins (2000),89 Ohio St.3d 524, 530. Further, the state submitted a copy of court orders indicating that appellant was obligated to pay child support and account summaries from CSEA which showed appellant's failure to pay support. Viewing this evidence in the light most favorable to the state, this court finds that there was sufficient evidence to support a finding of guilty. *Page 7 
 {¶ 16} Turning next to appellant's argument that his conviction was against the manifest weight of the evidence, this court disagrees. The state presented evidence demonstrating that appellant failed to pay the required support during the relevant time period. In response, appellant presented evidence that he had paid some money directly to Ebony without going through CSEA. And, although Ebony testified that appellant probably gave her between $2,000 and $2,500 over the time period, she testified that appellant never gave her $800 to $900 at a time as he had testified and, further, she testified that appellant only gave her money when she asked for it. Considering the stipulations, the state's documentation, and the testimony, this court finds that appellant's conviction was not against the manifest weight of the evidence.
 {¶ 17} Having found that appellant's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, appellant's first assignment of error is overruled.
 {¶ 18} In his second assignment of error, appellant contends that he introduced sufficient credible evidence at the trial to establish the affirmative defense set forth in R.C. 2919.21(D), by a preponderance of the evidence.
 {¶ 19} In asserting this affirmative defense, appellant bears the burden of proving by a preponderance of the evidence that: (1) he was unable to provide the court ordered support; and (2) he did provide such support as was within his ability and means. As stated previously, both elements must be met in order to successfully assert the affirmative defense of inability to pay.
 {¶ 20} Appellant testified that he had tried to start his own flooring business, but that the work slowed down and the jobs he got were smaller. Further, appellant testified *Page 8 
that, during the time at issue, he was paying child support for two other children, he owed income taxes to the IRS, and he had recently negotiated an agreement to repay his student loans at a rate of $75 per month. Further, appellant testified that Marquan stayed with him "two or three times a week, maybe spend the night, you know, twice in a three-month period." (Tr. 15.) In contrast, Ebony testified that appellant had Marquan at his residence "maybe a day or two and then bring him back home," and that this happened "maybe two times a week or every other weekend." (Tr. 22.) At those times, appellant provided for Marquan's needs. Further, appellant testified that he gave Marquan money for his birthdays and that he gave Ebony money any time she asked for it.
 {¶ 21} On the other hand, the evidence indicates that appellant was in good health, and that, sometime near the end of the time period at issue, he took a second job working at a movie theater. However, that is the only evidence that appellant made any attempts to secure other employment in order to meet his child support obligations and there is no evidence that appellant attempted to regularly pay any sums of money for Marquan's support.
 {¶ 22} As noted previously, the trial court concluded that appellant had not done everything he could have done or should have done to meet his child support obligation. Although appellant testified that he had fewer jobs and the jobs he had were smaller, appellant did not make any effort to find additional work, in spite of an ability to do so, until the very end. Appellant testified that his job at the movie theater paid him approximately $100 every two weeks. As such, appellant was earning $200 per month. It appears reasonable to assume that appellant could have secured other work earlier and could have secured employment which paid him more than $200 per month. *Page 9 
 {¶ 23} Appellant cites this court's decision in State v. Holmes, Franklin App. No. 03AP-797, 2004-Ohio-2135, wherein this court reversed the lower court's determination that Holmes was guilty of non-support as defined in R.C. 2919.21(B). However, the facts from the Holmes case are substantially different from the facts here. In Holmes, the evidence showed that Holmes had several jobs during the relevant time period at issue there and that those employers deducted the payments from his paycheck and sent them to CSEA. Holmes worked as a truck driver from May 1997 until October 1998, but was terminated because he needed more experience connecting double trailers. Holmes then began another job in February 1999, but this employment was terminated in July 1999 after he displayed improper conduct and misappropriated company property. Holmes testified that this incident was a misunderstanding and that he was rehired in the summer 2001. However, Holmes had several health problems, including: morbid obesity, severe depression, diabetes, high blood pressure, and grossly swollen legs and he sought medical treatment for his health problems. Given those facts, this court determined that Holmes had established the affirmative defense by a preponderance of the evidence.
 {¶ 24} By contrast, here, appellant made no payments through CSEA, remained self-employed in spite of the fact that his business was not doing well, made no efforts to obtain other employment so that he could meet his child support obligations until the very end, made arrangements to meet his other financial obligations, and was in good health. These facts contrast sharply with the facts in the Holmes case.
 {¶ 25} This court concludes that the trial court's finding that appellant did not meet his burden of proving the affirmative defense is supported by the record and appellant's second assignment of error is overruled. *Page 10 
 {¶ 26} Based on the foregoing, appellant's assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and KLATT, JJ., concur.
DESHLER, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1