[Cite as *State v. Shabazz*, 2016-Ohio-5238.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103617**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## AUBREY SHABAZZ

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-585777-A

**BEFORE:** Celebrezze, J., Jones, A.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** August 4, 2016

**ATTORNEY FOR APPELLANT**

Mary Catherine O'Neill
50 Public Square, Ste. 1900
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Gittel L. Chaiko
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

**{¶1}** Defendant-appellant, Aubrey Shabazz ("appellant"), brings this appeal challenging his convictions for nonsupport of dependents. Specifically, appellant argues that (1) the trial court erred by failing to dismiss the charges on double jeopardy grounds, (2) the trial court admitted improper evidence, (3) the trial court denied him his right to counsel, (4) trial counsel rendered ineffective assistance, and (5) the guilty verdict cannot be upheld because he met his burden on the affirmative defense of an inability to pay child support under R.C. 2919.21(D). After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

**{¶2}** Appellant's daughter was born in 1999. On May 26, 1999, the Cuyahoga County Child Support Agency ("CSEA") ordered appellant to pay child support for his minor child in the amount of $228.40 per month. Appellant failed to comply with CSEA's order and a motion to show cause was filed on March 18, 2005. The parties reached an agreement and determined that appellant owed child support arrears in the amount of $7,003.14. The trial court found appellant to be in contempt on April 26, 2010. The trial court determined that appellant owed child support arrears in the amount of $9,889.27. The trial court imposed a 20-day sentence. The trial court suspended the sentence and provided appellant with the opportunity to purge his contempt by either

making 12 consecutive payments of $225 or paying a $600 lump sum. Appellant failed to make the purge payments and a motion to execute his sentence was filed.

{¶3} The trial court found appellant to be in contempt a second time on April 15, 2013. The trial court determined that appellant owed child support arrears in the amount of $16,395.36. The trial court imposed a 50-day sentence, but suspended the sentence and provided appellant with the opportunity to purge his contempt by paying $1,000 within 150 days of the trial court's journal entry. Appellant made the $1,000 payment to purge his jail sentence.

{¶4} In CR-14-585777-A, the Cuyahoga County Grand Jury returned a three-count indictment charging appellant with nonsupport of dependents, fifth-degree felonies in violation of R.C. 2919.21(B). Count 1 pertained to June 1, 2008 through May 31, 2010. Count 2 pertained to June 1, 2010 through May 31, 2012. Count 3 pertained to June 1, 2012 through May 31, 2014. The trial court found appellant to be indigent for purposes of the criminal matter and appointed a public defender as counsel. Appellant pled not guilty to the charges, and the matter was set for trial.

{¶5} On December 23, 2014, appellant's counsel filed a motion to withdraw. Appellant contends that the trial court failed to rule on this motion. Appellant requested to represent himself in the matter. The trial court held a hearing and granted appellant's request to proceed pro se. Appellant signed a written waiver of his right to counsel and an intent to proceed pro se, pursuant to Crim.R. 44. The trial court appointed standby counsel.

**{¶6}** A jury trial commenced. Appellant moved for a Crim.R. 29 judgment of acquittal at the close of the state's case and at the close of all the evidence. The trial court denied both motions. After deliberations, the jury advised the trial court that it had reached an impasse. On May 8, 2015, the trial court declared a mistrial and discharged the jury.

**{¶7}** The trial court set a new trial date and reassigned defense counsel. A second trial commenced on August 18, 2015. Appellant's counsel moved for a Crim.R. 29 judgment of acquittal at the close of the state's case and at the close of all the evidence. The trial court denied both motions. The jury returned a guilty verdict on all three nonsupport counts. The trial court sentenced appellant to community control for a period of five years. Furthermore, the trial court ordered appellant to pay restitution in the amount of $20,873.85 for child support arrears and ordered appellant to pay monthly child support in the amount of $216.34.

**{¶8}** Appellant filed the instant appeal assigning five errors for review:

I. The trial court erred in failing to dismiss the charges on double jeopardy grounds.

II. The guilty verdict cannot be upheld because the trial court erred in admitting improper evidence.

III. The trial court erred by failing to rule on a pretrial motion to withdraw as counsel thereby denying the appellant his right to counsel.

IV. The guilty verdict cannot be upheld because trial counsel provided ineffective assistance of counsel thereby violating appellant's right to counsel.

V. The guilty verdict cannot be upheld because the appellant met his burden of proof in regards to the affirmative defense.

## II. Law and Analysis

### A. Double Jeopardy

{¶9}   In his first assignment of error, appellant argues that the state's prosecution for nonsupport of dependents violated his Fifth Amendment protection against double jeopardy.   In support of his argument, appellant contends that the juvenile court's April 26, 2010 finding of contempt and June 7, 2011 execution of his sentence were criminal in nature, and thus barred the subsequent prosecution for the nonsupport charges. Appellant emphasizes that the offenses charged in Counts 1 and 2 predated the trial court's execution of his sentence on June 7, 2011.

{¶10}   We initially note that appellant neither filed a motion to dismiss the charges on double jeopardy grounds nor asserted a violation of his Fifth Amendment protection against double jeopardy in the trial court.   Accordingly, because appellant raises the double jeopardy issue for the first time on appeal, we review for plain error. Pursuant to the terms of Crim.R. 52(B), plain errors or defects that affect substantial rights may be grounds for reversal even though they were not brought to the attention of the trial court.   "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."   *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

**{¶11}** Under the Double Jeopardy Clause of the Fifth Amendment, defendants may not be subjected to successive prosecutions for the same offense. *State v. Lovejoy*, 79 Ohio St.3d 440, 443, 683 N.E.2d 1112 (1997). Double jeopardy may be applied in cases involving contempt charges, but only if the contempt penalty is criminal in nature, rather than civil. *Dayton Women's Health Ctr. v. Enix,* 68 Ohio App.3d 579, 591, 589 N.E.2d 121 (2d Dist.1991). Thus, this court must determine if the juvenile court's findings of contempt were criminal or civil in nature.

**{¶12}** The difference between these types of contempt is that civil contempt is remedial and is designed to stop misconduct, while criminal contempt is punitive and is intended to vindicate the court's authority. *Id.* Furthermore, in *Denovchek v. Bd. of Trumbull Cty. Commrs.*, 36 Ohio St.3d 14, 520 N.E.2d 1362 (1988), the Ohio Supreme Court explained that the distinction between civil and criminal contempt is based on the character and purpose of the contempt sanctions:

> If sanctions are primarily designed to benefit the complainant through remedial or coercive means, then the contempt proceeding is civil. *Brown* [*v. Executive 200, Inc.,* 64 Ohio St.2d 250, 253], 416 N.E.2d 610 [(1980)]. Often, civil contempt is characterized by conditional sanctions, i.e., the contemnor is imprisoned until he obeys the court order. *But, see,* [*State v.*] *Kilbane,* [61 Ohio St.2d 201, 400 N.E.2d 386 (1980)] Criminal contempt, on the other hand, is usually characterized by an unconditional prison sentence or fine. *Brown, supra*, at 253-254, 18 O.O. 3d at 449, 416 N.E.2d at 613. Its sanctions are punitive in nature, designed to vindicate the authority of the court. *See Brown, supra*, at 254, 18 O.O. 3d at 449, 416 N.E.2d at 613; *Kilbane, supra. See, generally, Gompers v. Bucks Stove & Range Co.* (1911), 221 U.S. 418, 441-444.

*Id*. at 16.

**{¶13}** The critical feature that determines whether contempt is criminal or civil in nature "is not when or whether the contemnor is physically required to set foot in a jail but whether the contemnor can avoid the sentence imposed on him, or purge himself of it, by complying with the terms of the original order." *Hicks v. Feiock*, 485 U.S. 624, 636, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), fn. 7.

**{¶14}** "'[C]ontempt proceedings for failure to pay child support are generally civil in nature as any potential jail sentence is designed merely to encourage payment.'" *State v. Gum*, 8th Dist. Cuyahoga No. 92723, 2009-Ohio-6309, _ 15, quoting *Morford v. Morford*, 85 Ohio App.3d 50, 59, 619 N.E.2d 71 (4th Dist.1993). However, appellant contends that the contempt proceedings become criminal in nature when the court imposes a jail sentence without giving the obligor an opportunity to purge the contempt.

**{¶15}** After reviewing the record, we find that the juvenile court's April 26, 2010 and April 15, 2013 contempt findings were civil in nature. On both occasions, the trial court imposed conditional sentences and suspended the sentences. The juvenile court provided appellant with the opportunity to purge both his 2010 and 2013 contempt by making the required payments. The record reflects that on June 7, 2011, the trial court executed the 20-day sentence imposed for the 2010 contempt, but only after appellant failed to make the payments to purge his contempt. Furthermore, the record reflects that appellant did in fact avoid the 50-day sentence imposed for the 2013 contempt by making the required purge payments.

**{¶16}** Accordingly, because the juvenile court's contempt proceedings were civil in nature, the state was not barred from subsequently prosecuting appellant for nonsupport under R.C. 2919.21. The trial court did not commit plain error by allowing the state to proceed with the prosecution of the nonsupport charges against appellant. Appellant's first assignment of error is overruled.

## B. Prior Findings of Contempt

**{¶17}** In his second assignment of error, appellant argues that the trial court erred by admitting evidence of the juvenile court's findings of contempt for appellant's failure to comply with the child support order. Appellant contends that the trial court violated Evid.R. 403(A) by admitting the evidence of the juvenile court's findings of contempt.

**{¶18}** The admission or exclusion of evidence is a matter left to the trial court's sound discretion and will not be disturbed absent an abuse of discretion. *State v. Dunn*, 8th Dist. Cuyahoga No. 101648, 2015-Ohio-3138, ¶ 40. An abuse of discretion is a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

**{¶19}** Evid.R. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 402 provides that "[a]ll relevant evidence is admissible * * *. Evidence which is not relevant is not admissible." Evid.R. 403(A) provides, "[a]lthough relevant, evidence is not

admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶20} In *State v. Wiley*, 8th Dist. Cuyahoga No. 99576, 2014-Ohio-27, defendant-appellant was convicted of six counts of criminal nonsupport, in violation of R.C. 2919.21(B). *Id.* at _ 1. Prior to the prosecution for nonsupport, the domestic relations court found appellant to be in contempt of court for nonpayment of child support in 2010. *Id.* at _ 8. During the prosecution for nonsupport, the state introduced a certified copy of the 2010 civil contempt order. On appeal, defendant-appellant challenged the admission of the civil contempt order for nonpayment of child support, arguing that the trial court "committed prejudicial error" by admitting the evidence. *Id.* at _ 26. This court held that the civil contempt finding "was relevant to establish Wiley's obligation to pay court-ordered child support, his breach of that obligation, and whether he acted recklessly in breaching that obligation." *Id.* at _ 27.

{¶21} The *Wiley* holding was based on the Fifth District's reasoning in *State v. Trickett*, 5th Dist. Stark No. 2002CA00289, 2003 Ohio App. LEXIS 3059 (June 23, 2003). In *Trickett*, defendant-appellant argued that the trial court abused its discretion by admitting evidence of a family court's prior civil contempt order for nonpayment of child support during the prosecution for criminal nonsupport under R.C. 2919.21(B). *Id.* at 4. The appellate court rejected appellant's argument and held that the trial court did not abuse its discretion by admitting the evidence of the family court's civil contempt order:

In order to find appellant guilty of criminal non-support, the State was required to prove not only appellant's legal obligation to support the child, but also his breach of that obligation. * * * Through the introduction of the [finding of civil contempt] from family court, the State offered circumstantial evidence to establish appellant's legal obligation to pay support, his knowledge of such obligation, and his breach of this duty. Accordingly, we find the judgment entry was relevant and the trial court's admission of such was not an abuse of discretion.

*Id*. at 6.

**{¶22}** In the instant matter, appellant was charged with three counts of nonsupport of dependents in violation of R.C. 2919.21(B). R.C. 2919.21(B) provides, "[n]o person shall abandon, or fail to provide support as established by a court order to, another person whom, by court order or decree, the person is legally obligated to support." Although the statute does not specify a degree of intent, the Ohio Supreme Court has interpreted the statute to require proof of recklessness. *State v. Collins*, 89 Ohio St.3d 524, 529-530, 733 N.E.2d 1118 (2000). R.C. 2901.22 provides, in relevant part:

(_) A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

Accordingly, the state was required to prove that appellant had a legal obligation to support the child and that appellant breached that obligation. The state presented the journal entries of the juvenile court's findings of contempt for nonpayment of child support. The evidence of the juvenile court's findings of contempt was relevant to establish appellant's obligation to pay the court-ordered child support, his breach of that

obligation, and whether he acted recklessly in breaching his obligation. Furthermore, after reviewing the record, we cannot say that the probative value of the journal entries was substantially outweighed by the danger of unfair prejudice.

{¶23} The trial court carefully reviewed the evidence of the juvenile court's findings of contempt prior to admitting the evidence over defense counsel's objections. Thus, we cannot say that the trial court abused its discretion by admitting the evidence. Appellant's second assignment of error is overruled.

### C. Motion to Withdraw as Counsel

{¶24} In his third assignment of error, appellant argues that the trial court erred by failing to rule on his counsel's pretrial motion to withdraw as counsel. Appellant argues that he was forced to "proceed virtually unrepresented," in violation of his right to counsel, while the motion was pending.

{¶25} Appellant's counsel filed the motion to withdraw on December 23, 2014, stating that his relationship with appellant had "become increasingly strained making the continuation of the relationship very difficult." Counsel explained that appellant "has no faith in [counsel's] abilities," "requested that the Public Defender withdraw as counsel," and "would rather represent himself than proceed with the Public Defender's Office as [counsel]."

{¶26} On May 6, 2015, appellant rejected the state's plea bargain and the trial court called the matter for trial. Before the trial court called the jury, appellant notified the trial court that he wanted to represent himself. Appellant explained that he and his

counsel were not in agreement on how to defend against the charges. The trial court engaged appellant in a thorough colloquy to ensure that he understood the decision, he understood the state's case, he was making the decision freely and voluntarily, and that he understood the risks he was assuming by proceeding pro se. After discussing the matter with appellant, the trial court granted his request to proceed pro se. Furthermore, the trial court reviewed a written waiver of the right to counsel and expression of an intent to proceed pro se with appellant. After reviewing the document with appellant, the trial court instructed him to sign the form if he wished to proceed pro se. Appellant signed the form, and the trial court admitted it into the record.

{¶27} Appellant's counsel volunteered to serve as standby counsel. The trial court discussed the role of standby counsel with appellant. Appellant indicated that he wished to have standby counsel to consult with during the trial. The trial court appointed appellant's counsel as standby counsel.

{¶28} After reviewing the record, we find that the record contains no entry ruling on counsel's motion to withdraw. However, when the trial court granted appellant's request to represent himself, counsel's motion to withdraw became moot. The record reveals that counsel rescinded his motion to withdraw and that the trial court implicitly denied counsel's motion.

{¶29} When a trial court fails to rule on a motion, the motion is considered denied. *Solon v. Solon Baptist Temple, Inc.*, 8 Ohio App.3d 347, 351-352, 457 N.E.2d 858 (8th Dist.1982); *Georgeoff v. O'Brien*, 105 Ohio App.3d 373, 378, 663 N.E.2d 1348 (9th

Dist.1995). Although appellant's counsel filed a motion to withdraw, he volunteered to serve as appellant's standby counsel. By volunteering to serve as appellant's standby counsel, counsel essentially rescinded his motion to withdraw and left his continued participation at appellant's and the trial court's discretion. Appellant indicated that he wished to have standby counsel during trial. The trial court granted appellant's request and appointed appellant's counsel as standby counsel. Appellant did not object to counsel serving as his standby counsel. Accordingly, the record reveals that the trial court implicitly denied counsel's motion to withdraw by appointing him to serve as appellant's standby counsel.

{¶30} When the trial court granted appellant's request to represent himself, counsel's motion to withdraw as counsel became moot. Furthermore, appellant cannot show that he was prejudiced by either the trial court's delay in considering the merits of counsel's motion to withdraw or the failure to rule on the motion. Appellant expressed his desire to represent himself to counsel before counsel moved to withdraw in December 2014. Counsel moved to withdraw because appellant wanted to represent himself. Although the trial court did not explicitly rule on counsel's motion, it did grant appellant's request to proceed pro se before trial commenced. Thus, because the trial court granted his request to represent himself, appellant cannot demonstrate that he was prejudiced by the trial court's failure to rule on counsel's motion to withdraw. Finally, appellant's argument that the trial court's failure to rule on counsel's motion to withdraw "caused [him] to proceed virtually unrepresented through the pendency of the matter" is

entirely unsupported by the record. The record reflects that appellant's counsel was present at all of the pretrial hearings, even after he filed the motion to withdraw as counsel.

{¶31} Based on the foregoing analysis, appellant's third assignment of error is overruled.

### D. Ineffective Assistance of Counsel

{¶32} In his fourth assignment of error, appellant argues that he received ineffective assistance of counsel during his trial.

{¶33} In order to establish a claim of ineffective assistance of counsel, the defendant must show that his trial counsel's performance was deficient in some aspect of his representation and that deficiency prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Under *Strickland*, our scrutiny of an attorney's representation must be highly deferential, and we must indulge "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 689. In Ohio, every properly licensed attorney is presumed to be competent and, therefore, a defendant claiming ineffective assistance of counsel bears the burden of proof. *State v. Smith*, 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985).

{¶34} First, appellant argues that counsel's assistance was ineffective because counsel failed to move for a dismissal of Counts 1 and 2 on double jeopardy grounds. Assuming arguendo that counsel's failure to move to dismiss Counts 1 and 2 constituted

deficient performance, appellant's claim fails under the second *Strickland* prong.  As previously noted, the juvenile court's findings of contempt were civil in nature because the court imposed conditional, suspended sentences and provided appellant with the opportunity to purge his contempt by making the required payments.   The prosecution for nonsupport did not violate appellant's protection against double jeopardy. Accordingly, appellant cannot show that he was prejudiced by counsel's failure to move to dismiss Counts 1 and 2.

{¶35} Second, appellant argues that counsel's assistance was ineffective because counsel failed to renew his pro se motions for a Crim.R. 29 judgment of acquittal within 14 days after the jury was discharged.   Appellant suggests that his motions for a Crim.R. 29 judgment of acquittal during the first trial were "deficient" because they were made pro se and without the assistance of standby counsel.

{¶36} Based on our review of the record, we find that appellant's argument is outside the scope of the appeal before this court.   Appellant filed the instant appeal challenging his nonsupport convictions from the second trial.    However, the motions for a Crim.R. 29 judgment of acquittal that appellant contends his counsel had a duty to renew were made during the first trial.   Thus, appellant's ineffective assistance claim alleging deficient performance during the first trial is both irrelevant to the second trial and outside the scope of the instant matter.   Accordingly, we will not address the merits of appellant's ineffective assistance claim to the extent that it calls counsel's performance during the first trial into question.

**{¶37}** Appellant's fourth assignment of error is overruled.

## E. R.C. 2919.21(D) Affirmative Defense

**{¶38}** In his fifth assignment of error, appellant argues that the jury's verdict cannot be upheld because he met his burden of proof regarding the affirmative defense of an inability to pay child support under R.C. 2919.21(D). Specifically, appellant argues that his convictions for nonsupport of dependents are against the manifest weight of the evidence because he met his burden of proof on the affirmative defense.

**{¶39}** In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins,* 78 Ohio St.3d 380, 678 N.E.2d 541 [1997]. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. *Id*. at 386. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id*. at 386-387. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be

against the manifest weight of the evidence. *Id*. at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id*. at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 [(1982)].

*Id*. at _ 25.

{¶40} An appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id*.

{¶41} In the instant matter, appellant argues that his testimony established the elements of the affirmative defense outlined in R.C. 2919.21(D). R.C. 2919.21(D) provides, "[i]t is an affirmative defense to * * * a charge of failure to provide support established by a court order under division (B) of this section that the accused was unable to provide adequate support or the established support but did provide the support that was within the accused's ability and means." In *Wiley*, 8th Dist. Cuyahoga No. 99576, 2014-Ohio-27, this court addressed the burden of proof on the affirmative defense, as follows:

> To prevail on this affirmative defense, a defendant must prove, by a preponderance of the evidence, that he: (1) is unable to provide the court-ordered support and (2) provided such support as was within his ability and means. *See, e.g., State v. Carter*, 10th Dist. Franklin No. 07AP-141, 2007-Ohio-6502, ¶ 14, citing *State v. Brown*, 5 Ohio App.3d 220, 222, 451 N.E.2d 1232 (5th Dist.1982). "Both elements must be met in order to successfully assert the affirmative defense of inability to pay." *Id*. "Lack of means alone cannot excuse lack of effort." *State v. Williams*, 5th Dist. Delaware No. 06 CAA 04 0026, 2007-Ohio-63, ¶ 40, citing *Brown* at 222; *see also State v. Balfour*, 8th Dist. Cuyahoga No. 97547, 2012-Ohio-3453, ¶ 16.

*Wiley* at _ 44.

{¶42} Appellant testified about the time period relevant to Count 1, June 1, 2008 through May 31, 2010. He testified that he worked consistently from 1999 to 2008 as a truck driver. He lost two jobs in 2008 when the companies went out of business and, as a result, he was forced to go into business for himself. Appellant started his own business and obtained an L.L.C. He testified that he had surgery on his foot in November 2009, and that he could not conduct business because he was incapacitated for six months. According to appellant, he went to CSEA while recovering from the surgery and filed for a modification. He testified that he went to court in 2010 because he fell behind on his child support payments. Appellant told the jury that his driver's license was suspended and that he was incarcerated. According to him, after serving 13 days in jail, he was released and sought employment opportunities. He testified that he was not able to find employment after being released because his driver's license was suspended, which occurred "at least 10 times." He testified that during the time period relevant to Count 1, he made regular payments "[a]t all points in which [he] had verifiable

employment." He estimated that he paid approximately $2,100 towards child support between 2008 and 2010.

{¶43} Appellant testified about the time period relevant to Count 2, June 1, 2010 through May 31, 2012. He described that his financial situation was "dire" in 2011, and explained that he did not have any work because the economy was "just flat-lined, I mean completely dead." He testified that he was looking for work but that his suspended driver's license "cost [him his] job." According to appellant, he relied on his wife financially when he was out of work or barely working. He testified that he paid approximately $850 towards child support between 2010 and 2012.

{¶44} Relative to Count 3, June 1, 2012 through May 31, 2014, appellant testified that his business started "picking back up" in 2013, and that he was able to obtain some contracts. He testified that he paid approximately $1,800 towards child support between 2012 and 2014.

{¶45} According to appellant, during the time periods relevant to the three nonsupport counts, any money that he had went towards child support rather than to his household or wife. He testified that his wife paid the rent during the time periods that he was not able to work. He pursued job opportunities that did not involve driving. He testified that he had a job shoveling snow but that he lost the job as a result of his obligations to appear in court for matters relating to his child support order. He participated in the "Fatherhood Initiative" program through CSEA, either in 2009 or 2010, in order to get his license reinstated. He initially testified that he got his license

reinstated after attending the program, but then later testified that his driver's license was not reinstated after participating in the program and that he "didn't get any benefits out of [the program]."

**{¶46}** Appellant testified that he lived with his wife and 15-year-old son. His son plays football but appellant does not have to pay the costs for his son to play. His son has a smartphone, but appellant admitted that the phone bill is "cheap," and that his wife pays the bill. Further, his son plays video games and he, his wife, and other family members buy the games for birthday gifts. According to appellant, he and his wife provide for their son together. He testified that he and his wife both pay rent, but that his wife paid the rent when he "fell on some hard times[.]"

**{¶47}** The state presented the testimony of (1) the child's mother, (2) appellant's daughter, and (3) CSEA caseworker Amanda Aliff ("Aliff").

**{¶48}** First, the child's mother testified that the child was born in 1999 and that she was 16 years old at the time of appellant's trial. She testified that appellant never made payments directly to her outside of the CSEA system. She could not recall how many payments appellant made between June 1, 2008 and May 31, 2010, because he "would make a payment off and on, off and on[.]" She testified that between June 1, 2010 and May 31, 2012, appellant made payments "off and on," and that he would make a payment for two or three months and then stopped making payments for a year. According to the mother, appellant's payments were not "ongoing." She testified that she is unaware of any health problems that appellant has that would prevent him from working.

{¶49} Second, appellant's daughter testified that appellant gave her $10 three or four times when she was "little." She testified that appellant bought her a pair of tennis shoes and paid for one of her haircuts. She testified that she does not know of any disability or health issue that prevents appellant from working.

{¶50} Third, Aliff testified that she is an enforcement officer in the CSEA criminal nonsupport unit. She testified that appellant was originally ordered to pay child support to the mother for his daughter in the amount of $228.40 per month.

{¶51} Aliff testified that between June 1, 2008 and May 31, 2010, appellant was ordered to pay $228.40 per month and made the following payments: (1) $342.60 in September 2008; (2) $105 in December 2008; (3) $105 in January 2009; (4) $210 in February 2009; (5) $211 in April 2009; (6) $211 in July 2009; (7) $230 in September 2009; (8) $549.07 in November 2009; and (9) $145 in February 2010. She testified that appellant missed 13 months of payments during the time period. According to Aliff, appellant made four payments in 2008 and six payments in 2009. She testified that the amount due was $5,481.60, and that appellant paid $2,138.67, leaving a remaining balance of $3,342.93. Although appellant testified that he went to CSEA after his surgery and filed for a modification, she testified that there was no record of any injuries or disabilities that would prevent appellant from working.

{¶52} Aliff testified that between June 1, 2010 and May 31, 2012, appellant was ordered to pay $228.40 per month and made the following payments: (1) $128 in June 2010; (2) $127 in July 2010; (3) $150 in August 2010; (4) $128 in November 2010; (5)

$80 in February 2011; (6) an unspecified payment in March 2011; and (7) $45.01 in May 2012. She testified that appellant missed 17 months of payments during the time period. She testified that appellant made five payments in 2010 and two payments in 2011. She testified that the amount due was $5,497.90 and that appellant paid $858.01.

{¶53} Aliff testified that between June 1, 2012 and May 31, 2014, appellant was ordered to pay $231.66 per month and made the following payments: (1) $258.26 in September 2012; (2) $130 in December 2012; (3) $113.56 in January 2013; (4) $227.12 in February 2013; (5) $734.33 in June 2013; (6) $220 in July 2013; and (7) $180 in August 2013. She testified that appellant missed 17 months of payments during this time period. She testified that appellant made three payments in 2012 and five payments in 2013. She testified that the amount due was $5,559.84 and that appellant paid $1,863.27.

{¶54} Aliff testified that the last time she had a record of verifiable employment for appellant was on December 20, 2009, and that after that date, appellant reported that he was self-employed and making deliveries for a living. She testified that there was no way of tracking appellant's income when he was self-employed. She testified that she did not believe appellant had any disabilities or physical incapacities that would prevent him from working. According to Aliff, any payments made outside of the CSEA system are considered gifts and the obligor can only receive credit for these payments if they go to court. She testified that she had no knowledge of any payments appellant made outside of the CSEA system. She testified that when an obligor's driver's license is

suspended, the obligor can have the license reinstated either by verifying employment, participating in the "Fatherhood Initiative" program, or making a child support payment. She explained that the program is free and assists obligors to find employment. She testified that in order to get his license reinstated, appellant "made payments and/or turned in employment that we could deduct money from." She testified that appellant did not participate in any of the "Fatherhood Initiative" programs through CSEA; however, she testified that it is possible to participate in the program without going through CSEA.

{¶55} After reviewing the record, we cannot say that this is "an exceptional case" in which the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions for nonsupport were against the manifest weight of the evidence. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Appellant had the burden of proving by a preponderance of the evidence that he was unable to pay the court-ordered child support and that he provided the support that was within his ability and means.

{¶56} The decision whether, and to what extent, to believe the testimony of a particular witness is "within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Johnson*, 8th Dist. Cuyahoga No. 99822, 2014-Ohio-494, _ 54. The jury had sufficient information to judge appellant's credibility and "was free to believe all, part, or none of [his] testimony[.]" *State v. Colvin*, 10th Dist. Franklin No.

04AP-421, 2005-Ohio-1448, ¶ 34; *State v. Smith*, 8th Dist. Cuyahoga No. 93593, 2010-Ohio-4006, ¶ 16.

{¶57} In the instant matter, appellant's testimony was the only evidence presented by the defense regarding the affirmative defense. Specifically, appellant testified about his employment history and income during the relevant time periods, about his foot surgery and driver's license suspensions that he claimed prevented him from working, and the child support payments that he was able to make. In finding appellant guilty of nonsupport, the jury evidently concluded that either appellant's testimony was not credible or that he failed to prove the affirmative defense set forth in R.C. 2919.21(D). On the other hand, the state presented the testimony of appellant's daughter, the child's mother, and CSEA enforcement officer Aliff. Aliff testified in detail about appellant's employment history and income, payment history, and the juvenile court child support proceedings.

{¶58} The jury heard testimony regarding the hardships appellant asserted he encountered with respect to his lack of employment, foot surgery, and driver's license suspensions. Furthermore, the jury heard evidence that appellant missed 13 months of payments during the time period relevant to Count 1, and further missed 17 months of payments during the time periods relevant to Counts 2 and 3. In the event that appellant had a physical disability that prevented him from working, or if he was unable to work because of his foot injury or driver's license suspensions, appellant had a duty to report these circumstances to CSEA. However, CSEA's records show that appellant failed to

do so.   The jury did not lose its way simply because it chose to believe the state's version of the events rather than appellant's testimony that he paid within his ability and means. We must defer to the jury's credibility determination, and based on the record before us, we cannot say that the jury "clearly lost its way" in rejecting appellant's affirmative defense.

{¶59} Based on the foregoing analysis, we find that appellant's nonsupport convictions were not against the manifest weight of the evidence.   Appellant's fifth assignment of error is overruled.


### III. Conclusion

{¶60} The trial court did not commit plain error by allowing the state to proceed with the prosecution of the nonsupport charges against appellant.   The juvenile court's contempt proceedings were civil in nature because the court imposed conditional, suspended sentences and provided appellant with the opportunity to purge his contempt by making the required payments.   Thus, the subsequent prosecution for the nonsupport charges did not violate appellant's double jeopardy protections.   The trial court did not abuse its discretion by admitting the evidence of the juvenile court's 2010 and 2013 contempt findings.   The evidence was relevant to establish appellant's obligation to pay the court-ordered child support, his breach of that obligation, and whether he acted recklessly in breaching his obligation.   Furthermore, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

{¶61} Although the trial court did not rule on appellant's counsel's motion to withdraw, appellant was not denied his right to counsel. Appellant requested to represent himself and the trial court granted appellant's request after thoroughly reviewing his rights, ensuring that he was making the decision freely and voluntarily, and ensuring that he understood the risks he was assuming by proceeding pro se. When the trial court granted appellant's request to represent himself, counsel's motion to withdraw became moot. We cannot say that appellant's counsel rendered ineffective assistance by failing to move for a dismissal of Counts 1 and 2 on double jeopardy grounds. Even if appellant's counsel had moved for a dismissal of Counts 1 and 2, the counts would not have been dismissed on double jeopardy grounds because the juvenile court's contempt proceedings were civil in nature. Thus, appellant cannot show that he was prejudiced by the alleged deficiency.

{¶62} After reviewing the entire record, we find that appellant's nonsupport convictions were not against the manifest weight of the evidence. The jury heard appellant's testimony regarding the R.C. 2919.21(D) affirmative defense and was in the best position to determine if the proffered testimony was credible. We cannot say that this is an "exceptional case" in which the jury clearly lost its way and created such a manifest miscarriage of justice that appellant's convictions must be reversed and a new trial ordered.

{¶63} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK D. CELEBREZZE, JR., JUDGE

LARRY A. JONES, SR., A.J., and
TIM McCORMACK, J., CONCUR